# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| **CYNTHIA DENKINS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:11CV394MLM** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

This is an action under 42 U.S.C. § 405(g) for judicial review of the final decision of Michael J. Astrue ("Defendant") denying the application of Cynthia Denkins ("Plaintiff") for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Plaintiff filed a Brief in Support of Plaintiff's Complaint. Doc. 12. Defendant filed a Brief in Support of the Administrative Decision and in Reply to Plaintiff's Brief. Doc. 15. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). Doc. 6.

## I.
## PROCEDURAL HISTORY

Plaintiff filed an application for SSI benefits on March 11, 2008, alleging a disability onset date of October 20, 2007. Tr. 88-90. After receiving an unfavorable determination, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 51-55, 58. The ALJ found Plaintiff not disabled through the date of the decision, August 28, 2009. Tr. 13-23. The Appeals Council denied Plaintiff's request for review on January 11, 2011. Tr. 1-10. As such, the decision of the ALJ stands as the final decision of the Commissioner.

## II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines a "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996))).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); pt. 404, subpt. P, app. 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity ("RFC"). Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC.").

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a

reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to reweigh the evidence or review the factual record de novo. Cox, 495 F.3d at 617; Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1993); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because

the reviewing court would have decided differently. Krogmeier, 294 F.3d at 1022. See also Eichelberger, 390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

(1) The claimant's daily activities;

(2) The subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) Any precipitating or aggravating factors;

(4) The dosage, effectiveness, and side effects of any medication; and

(5) The claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322. The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. Id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. Polaski, 739, F.2d at 1322; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. Guilliams, 393 F.3d at 801; Masterson v. Barnhart, 363 F.3d 731, 738 (8th Cir. 2004); Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992); Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski

6

factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). See also Steed, 524 F.3d at 876

(citing Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). The ALJ need only acknowledge and

consider those factors. Id. Although credibility determinations are primarily for the ALJ and not the

court, the ALJ's credibility assessment must be based on substantial evidence. Rautio v. Bowen, 862

F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. §

404.1545(a)(1), and includes an assessment of physical abilities and mental impairments. 20 C.F.R.

§ 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past

relevant work can perform other work which exists in the national economy. Karlix v. Barnhart, 457

F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138,

1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove that the claimant retains the

RFC to perform other kinds of work. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857. The

Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431 (8th

Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden

of demonstrating that there are jobs available in the national economy that can realistically be

performed by someone with the plaintiff's qualifications and capabilities. Goff, 421 F.3d at 790;

Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert may be used. An

ALJ posing a hypothetical to a vocational expert is not required to include all of a plaintiff's

limitations, but only those which he finds credible. Goff, 421 F.3d at 794 ("[T]he ALJ properly

included only those limitations supported by the record as a whole in the hypothetical."); Rautio, 862

F.2d at 180. Use of the Medical Vocational Guidelines is appropriate if the ALJ discredits the

plaintiff's subjective complaints of pain for legally sufficient reasons. Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989).

### III.
### DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. Onstead, 962 F.2d at 804. Thus, even if substantial evidence exists that would support a decision opposite to that of the Commissioner, the court must affirm his decision as long as there is substantial evidence in favor of the Commissioner's position. Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

Plaintiff testified at the hearing before the ALJ that she attended high school through the tenth grade; that she briefly enrolled in culinary arts school in 2002; that she previously worked as a cook, hotel maid, and temporary worker; that she suffered from knee, hip, and back pain, shoulder dislocations, and leg stiffness, numbness, and swelling; and that she used a cane on a daily basis. Tr. 28-38. The ALJ found that Plaintiff had not engaged in substantial gainful activity since the date of her application; that Plaintiff suffered from the severe impairment of gouty arthritis; that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments; that Plaintiff's complaints about the intensity, persistence, and limiting effects of her symptoms were not fully credible; that Plaintiff had the RFC to perform the full range of sedentary work; that there were a significant number of jobs in the national economy that Plaintiff could perform; and that, therefore, Plaintiff was not disabled. Tr. 17-22.

Plaintiff contends that the ALJ's decision is not supported by substantial evidence because the medical evidence establishes that Plaintiff's allegations of pain were credible; because the ALJ improperly relied on the Medical Vocational Guidelines (the "Guidelines" or "GRIDS") and failed to consult with a vocational expert ("VE"); and because the ALJ failed to explain Plaintiff's physical and mental limitations in determining her RFC. Doc. 12 at 6-10. In addition, Plaintiff contends that the ALJ failed to give controlling weight to the opinion of Plaintiff's treating physician, Zarmeena Ali, M.D.; that, even if Dr. Ali's opinion were not controlling, the ALJ should have applied the factors listed in 20 C.F.R. §§ 404.1527 and 416.927 to assign greater weight to Dr. Ali's opinion; and that the ALJ was, in effect, "playing doctor." Doc. 12 at 11-15.

## A.     Plaintiff's Credibility

The court will first consider the ALJ's credibility determination. See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[Plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005)); 20 C.F.R. §§ 404.1545, 416.945 (2011). As described above, the ALJ's credibility findings should be affirmed if supported by substantial evidence on the record as a whole—a court cannot substitute its judgment for that of the ALJ. Guilliams, 393 F.3d at 801; Hutsell, 892 F.2d at 750; Benskin, 830 F.2d at 882. An ALJ need not methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make. See Lowe v. Apfel, 226 F.3d at 972. See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F.3d 963, 966

(8th Cir. 1996). In any event, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.2d 710, 714 (8th Cir. 2003). See also Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010); Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the court finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

First, the ALJ considered Plaintiff's work history. In particular, the ALJ considered Plaintiff's work history "sporadic" and concluded that Plaintiff had "never demonstrated a consistent motivation to work." Tr. 20. A long and continuous past work record with no evidence of malingering is a factor that bolsters the credibility of assertions of disabling impairments. Allen v. Califano, 613 F.2d 139, 147 (6th Cir. 1980). For the same reason, however, an ALJ may discount a claimant's credibility based upon a poor work record. Ownbey v. Shalala, 5 F.3d 342, 344 (8th Cir. 1993). See also Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996); McClees, 2 F.3d at 303. Plaintiff in the matter under consideration had no earnings between 1992 and 1997. Tr. 97. From 1998 to 2007, Plaintiff never made more than $2,600 in a given year, including two years when she had no earnings and three years when her income was below $1000. Tr. 97. The court finds that the ALJ's consideration of Plaintiff's work history is based on substantial evidence and that it is consistent with the Regulations and case law.

Second, the ALJ considered evidence of "illicit cocaine abuse" and held that it detracted from Plaintiff's credibility. Tr. 20. A plaintiff's misrepresentations about her medical history can serve to undermine her credibility. Johnson v. Chater, 87 F.3d 1015, 1018 (8th Cir. 1996). At the hearing,

the ALJ asked Plaintiff about the record reflecting that when she was at the hospital in 2008, she said that she was "doing cocaine." Plaintiff testified that she "didn't tell them that"; that when she went to the doctor they said she was on drugs; that she said "no"; and that she did not know if the doctor "mistake me - - but I'm not." The ALJ then asked Plaintiff if she "used to take drugs" and if she had "a history of that." Plaintiff responded that she had a history of "alcohol." Tr. 35. Then Plaintiff testified that she was "scared. I'm scared because I know I got to take this medicine. And they say you take that medicine with alcohol, you're going to have liver damage." Tr. 36. Records of May 7, 2008, from the Emergency Department of Barnes-Jewish Hospital ("BJH") reflect that Plaintiff denied using drugs and alcohol upon admission; that she tested positive for cocaine; and that cocaine abuse was listed as a secondary diagnosis in her discharge summary. Tr. 327, 334, 340. Records also reflect that when Plaintiff again presented to the BJH Emergency Department, on June 22, 2008, she denied using drugs and tested positive for cocaine. Tr. 292, 300, 316. The court finds, therefore, that substantial evidence supports the ALJ's finding that Plaintiff's cocaine abuse did not enhance her credibility.

Third, the ALJ considered Plaintiff's daily activities and found that they were inconsistent with Plaintiff's allegations of disabling symptoms and limitations. The ALJ further considered that Plaintiff was able to live and function independently. Tr. 20. Plaintiff testified that she cooked for herself "[e]very now and then," and that she often could not finish because of the stress of standing. Tr. 36-37. She also testified that she "never" finished household chores such as vacuuming, mopping, or dusting because she needed to sit down. Tr. 37. An ALJ is not required to believe all of a claimant's assertions concerning her daily activities. Johnson, 87 F.3d at 1018. Although "subjective complaints of pain cannot be disregarded solely because there is no supporting medical evidence, [] they can be

discounted if the ALJ finds inconsistencies in the record as a whole." Zeiler v. Barnhart, 384 F.3d 932, 936 (8th Cir. 2004) (citing Johnson v. Chater, 108 F.3d 942, 947 (8th Cir. 1997)). A record that does not reflect physician-imposed restrictions suggests that a claimant's restrictions in daily activities are self-imposed rather than by medical necessity. See Zeiler, 384 F.3d at 936 ("[T]here is no medical evidence supporting [the claimant's] claim that she needs to lie down during the day."); Fredrickson v. Barnhart, 359 F.3d 972, 977 n.2 (8th Cir. 2004) ("There is no evidence in the record that [the claimant] complained of severe pain to his physicians or that they prescribed that he elevate his foot or lie down daily."). The court finds that the ALJ properly considered Plaintiff's daily activities and that his decision, in this regard, is supported by substantial evidence.

Fourth, the ALJ considered that, to the extent Plaintiff's daily activities were limited, they were "restricted mainly as a matter of choice, rather than by any apparent medical [prescription]." Tr. 20. Plaintiff testified that she used a cane daily; that she used a motorized scooter for grocery shopping; and that, a year and a half prior to the hearing, Dr. Ali instructed her to use the cane. Tr. 33, 36. Dr. Ali stated, however, in the RFC questionnaire, completed on April 29, 2009, that Plaintiff did not require a cane or any other assistive device for occasional standing or walking. Tr. 44. A claimant's limitation which is self-imposed rather than a medical necessity is a basis upon which an ALJ may discredit the claimant's alleged limitation. See Blakeman v. Astrue, 509 F.3d 878, 882 (8th Cir. 2007) ("The issue is not whether [the claimant] was credible in testifying that he naps each weekday afternoon he is not working. The issue is whether his heart condition compels him to nap each afternoon."); Brunston v. Shalala, 945 F. Supp. 198, 202 (W.D. Mo. 1996 ("Plaintiff also testified that she spent part of the day lying down; however, no physician stated that such a need existed. If plaintiff was not lying down out of medical necessity, then that indicates that she was lying

down by choice."). The court finds that the ALJ's consideration of Plaintiff's self-imposed limitations is based on substantial evidence and that it is consistent with the Regulations and case law.

Fifth, the ALJ compared the objective medical evidence to Plaintiff's subjective complaints and concluded that physical exams and test results showed "some abnormalities" to explain Plaintiff's symptoms, "but not of a disabling frequency, severity, and duration." Tr. 20-21. The ALJ also considered that the severity of Plaintiff's subjective complaints were not supported or consistent with the objective medical evidence of record. Tr. 20. "The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is [] one factor to be considered in evaluating the credibility of the testimony and complaints." Polaski, 739 F.2d at 1322. The record reflects that, on October 25, 2007, shortly after her alleged onset date, Plaintiff's knee radiography showed a "[l]arge right knee effusion," with "[m]ild medial compartment narrowing of the right knee with narrowing of the right patellofemoral joint, suggestive of early osteoarthritis."[1] Tr. 447. On November 1, 2007, it was reported that Plaintiff was "able to fully weight bear"; that she had an "antalgic gait secondary to limited range of motion"; and that she was "not requiring any assistive devices." Tr. 400. Dr. Ali's records of December 11, 2007, reflect that Plaintiff's gait and stance were "[n]ormal" and that Plaintiff told Dr. Ali that day that she suffered from "AM stiffness in her right knee lasting 10 mins" and that she had no numbness or weakness and no problems bending or lifting. Also, on December 11, 2007, Dr. Ali reported that Plaintiff had no synovitis in the bilateral upper extremities; that Plaintiff had no erythema; that she had limited full extension "past 180"; that the left knee was normal; that Plaintiff's "ankles, MTP [were] unremarkable"; that no muscle

---

[1]     All emphases are added unless otherwise stated.

tenderness was seen; that Plaintiff's deep tendon reflexes were normal; that she had normal range of motion bilaterally in her hips; and that the assessment was "compression arthralgia of the knee/patella/tibia/fibula." Tr. 161-67.

On February 22, 2008, Dr. Ali noted "painful internal rotation but *no limitation*"; that Plaintiff did not suffer from shoulder impingement; that Plaintiff used a cane on her right side; and that no synovitis was seen in the bilateral upper extremities. Tr. 158. Upon Plaintiff's being admitted to the BJH emergency room, on April 2, 2008, it was noted that Plaintiff "ambulate[d] with a steady gait," including that she "ambulat[ed] to the phone and back multiple times" between her room and the nurses' station. Tr. 369, 371. After receiving treatment that day, Plaintiff was described as "having no pain at this time" and as moving "all extremities well." Tr. 371. On April 10, 2008, Dr. Ali found no synovitis in the bilateral upper extremities; that Plaintiff had mild crepitus in the right shoulder; that Plaintiff's knees were warm with effusion and painful range of motion; and that Dr. Ali's assessment was compression arthralgia. Tr. 264. Records of BJH, dated June 22, 2008, reflect that Plaintiff moved "all 4 extremities equally"; that she had a "*mild/moderate* knee effusion"; that no joint had significant erythema; and that her reason for admission was a "likely synovit[]is flair [sic]." Tr. 293-94.

On June 22, 2008, views of Plaintiff's right knee showed that she had "*moderate* joint effusion" with "*mild* nonuniform joint space narrowing." Tr. 307. Shoulder radiography performed on this same date at BJH showed "anatomic alignment with no fracture"; and that "[c]ystic foci seen in the right humeral head [were] likely related to insertional rotator cuff change." Tr. 323. BJH emergency room notes of June 22, 2008, state that Plaintiff had "*mild* tenderness" in both knees; that Plaintiff moved all four extremities equally; that Plaintiff's back was "*[n]ormal* to inspection"; that

Plaintiff's right shoulder was "stable"; and that "no joint anywhere [had] significant erythema." Tr. 293. On September 19, 2008, Plaintiff complained of right shoulder and right knee pain and told Dr. Ali that she believed she was having a "flare" of gout.[2] Dr. Ali noted on this date that no muscle tenderness was seen; that Plaintiff had no "costo vertebral angle tenderness"; that Plaintiff had "[abnormal dragging [in] her right leg due to pain in knee"; that Plaintiff's hand grip was normal bilaterally; that her right knee was warm with effusion; and that Plaintiff's "right shoulder abduction [was] painful past 80 with rotation." Tr. 250-51. On April 17, 2009, a few months before the July 2009 hearing, Dr. Ali reported that Plaintiff had no numbness in her limbs; that Plaintiff was "able to get full extension" of the right knee; that Plaintiff's gait and stance were "[n]ormal"; that she had "limited abduction past 100" in the right shoulder; and that Dr. Ali's assessment was gout. Tr. 535. The court finds, therefore, that the ALJ's consideration of the medical evidence upon considering Plaintiff's credibility is supported by substantial evidence and that the ALJ's decision, in this regard, is consistent with the Regulations and case law.

Sixth, the ALJ considered that Plaintiff's minimal or conservative treatment during her alleged period of disability was inconsistent with her allegation of being disabled. Tr. 20. "The ALJ may properly consider both the claimant's willingness to submit to treatment and the type of medication prescribed in order to determine the sincerity of the claimant's allegations of pain." Gray v. Apfel, 192 F.3d 799, 804 (8th Cir. 1999) (quoting Thomas v. Sullivan, 928 F.2d 255, 259 (8th Cir. 1991)). Additionally, where a plaintiff has not been prescribed any potent pain medication, an ALJ may properly discount the plaintiff's complaints of disabling pain. Clark v. Shalala, 28 F.3d 828, 831 n.4

---

[2]     The court notes that Plaintiff's having a "flare" of gout suggests that suffered from only periodic limitations from this condition.

(8th Cir. 1994); Benskin, 830 F.2d at 884 (holding that treatment by hot showers and taking dosages of Advil and aspirin do not indicate disabling pain); Cruse v. Bowen, 867 F.2d 1183, 1187 (8th Cir. 1989) (holding that minimal consumption of pain medication reveals a lack of disabling pain); Rautio, 862 F.2d at 179 (failure to seek aggressive treatment and limited use of prescription medications is not suggestive of disabling pain). Moreover, seeking limited medical treatment is inconsistent with claims of disabling pain. Edwards v. Barnhart, 314 F.3d 964, 967 (8th Cir. 2003) ("[T]he ALJ concluded, and we agree, that if her pain was as severe as she alleges, [Plaintiff] would have sought regular medical treatment."); Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) ("[Claimant's] failure to seek medical assistance for her alleged physical and mental impairments contradicts her subjective complaints of disabling conditions and supports the ALJ's decision to deny benefits."); Nelson v. Sullivan, 946 F.2d 1314, 1317 (8th Cir. 1991); James for James v. Bowen, 870 F.2d 448, 450 (8th Cir. 1989). At the July 2009 hearing, Plaintiff testified that she was taking calcium, iron pills, and prednisone, a steroid; that she had been taking Prednisone "almost two-and-a-half years"; that her doctor would taker her off and then put her back on this medication; that her doctor would also lower the dosage of her Prednisone; and that the Prednisone "helped a little bit but it constipated [her]." Tr. 35. During the hearing Plaintiff testified that she was "scared" to begin treatment with Methotrexate because she feared the side effects. Tr. 34. Also, Plaintiff reported that she was first prescribed Prednisone and Colchicine in April 2009 and that she took Aleve for pain in her legs and arms. Tr. 152. On March 20, 2009, it was reported that Plaintiff had not been on any medications for three months. Tr. 223. Records of April, 17, 2009 reflect that Plaintiff had been prescribed a Medrol dose pack and that the plan was for her to take Colchicine, with two thirty-day

refills for gout, and Prednisone, with two thirty-day refills for symmetric polyarticular inflammation. Tr. 534.

On October 25, 2007, Plaintiff was "uncooperative" during an attempt to aspirate her knee; she "refused any further attempts at aspiration"; and stated that she "would not have any fluid attempted to be aspirated off her knee under any circumstances today." Tr. 439. The following day she was given a knee immobilizer to use "[a]s needed for comfort only." Tr. 423. During a December 11, 2007, visit with Dr. Ali, Plaintiff also refused the doctor's suggestion to aspirate fluid from her knee. Tr. 168. Further, Plaintiff reported, on July 1, 2008, that she had been told that she did not need surgery for her right knee. Tr. 256. In April 2009, Dr. Ali assigned neck and shoulder exercises to treat Plaintiff's shoulder problem, and Plaintiff declined an injection for her shoulder. Tr. 34, 536. The court finds that the ALJ's consideration of the course and extent of Plaintiff's treatment is supported by substantial evidence and that the ALJ's decision, in this regard, is supported by substantial evidence.

Seventh, the ALJ considered the effectiveness and side effects of Plaintiff's medication. Conditions which can be controlled by treatment are not disabling. See Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir. 2009); Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009); Schultz v. Astrue, 479 F.3d 979, 983, (8th Cir. 2007); Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992); Warford v. Bowen, 875 F.2d 671, 673 (8th Cir. 1989); James for James v. Bowen, 870 F.2d 448, 450 (8th Cir. 1989). Additionally, the absence of side effects from medication is a proper factor for the ALJ to consider when determining whether a plaintiff's complaints of disabling pain are credible. See Depover v. Barnhart, 349 F.3d 563, 566 (8th Cir. 2003) ("We [] think that it was reasonable for the ALJ to consider the fact that no medical

records during this time period mention [the claimant's] having side effects from any medication."); Richmond v. Shalala, 23 F.3d 1441, 1443-44 (8th Cir. 1994). The ALJ failed to find evidence that the prescribed medication was not generally effective or that it presented notable side effects. Tr. 20. Although Plaintiff complained of weight gain and constipation on a higher dosage of Prednisone, she testified that a downward adjustment "helped a little bit." Tr. 35. Plaintiff also testified that her arm did not pop out of its socket as much when she started taking Prednisone and that "it kind of help[ed] a little bit." Tr. 38. The record reflects that, after receiving non-steroidal anti-inflammatories, Plaintiff reported, on November 1, 2007, that she was "feeling better with decreased swelling and improved range of motion." Tr. 400. After receiving pain medication at the hospital, on April 2, 2008, Plaintiff was discharged stating "that she is having no pain at this time." Tr. 371. Plaintiff also informed nurses that she had taken pain medication at home "with moderate relief" and that it was worse when she was out of medication. Tr. 371. On April 17, 2009, Plaintiff reported "mild improv[e]ment in pain and swelling" following a trial on the Medrol dose pack. Tr. 534. In her RFC assessment on April 29, 2009, Dr. Ali reported that Plaintiff "[r]espond[ed] to steroids" and previously "responded to intraarticular steroids (short-lived)." Tr. 42.

Furthermore, with regards to Plaintiff's shoulder, Plaintiff experienced an increase in her range of motion after performing Dr. Ali's suggested exercises. On March 20, 2009, Plaintiff's range of motion was limited to 60 degrees, and, after a month of exercises, Dr. Ali reported limited abduction past 110 degrees, on April 17, 2009. Tr. 225, 534-35. The court finds that the ALJ's consideration of the effectiveness and side effects of Plaintiff's medication is supported by substantial evidence and that the ALJ's decision, in this regard, is consistent with the Regulations and case law.

Eighth, the ALJ noted Plaintiff's demeanor during the hearing. Tr. 21. While an ALJ cannot accept or reject subjective complaints solely on the basis of personal observations, Ward v. Heckler, 786 F.2d 844, 847-48 (8th Cir. 1986), an ALJ's observations of a claimant's appearance and demeanor during the hearing is a consideration. Steed, 524 F.3d at 876 (holding that an ALJ "is in the best position" to assess credibility because he is able to observe a claimant during his testimony); Johnson v. Apfel, 240 F.3d 1145, 1147-48 (8th Cir. 2001) ("The ALJ's personal observations of the claimant's demeanor during the hearing [are] completely proper in making credibility determinations."). Here, the ALJ noted that Plaintiff "did not appear in any obvious credible physical discomfort" throughout the course of the hearing. Tr. 21. The court will not disturb this observation and concludes that the ALJ properly weighed Plaintiff's demeanor in his credibility assessment.

In conclusion, the court finds that the ALJ's credibility determination is based on substantial evidence and that it is consistent with the Regulations and the case law.

## B.      Opinion of Dr. Ali:

Plaintiff contends that the ALJ's decision is not supported by substantial weight because the ALJ should have given controlling weight to Dr. Ali's opinion, as Dr. Ali was Plaintiff's treating doctor. In particular, Plaintiff contends that Dr. Ali's opinion is consistent with Dr. Ali's own records; that Dr. Ali's opinion is supported by clinical evidence of record; and that, because Dr. Ali, as a rheumatologist, is a specialist, her opinion should have been controlling. Plaintiff further argues that the ALJ should have considered the factors in 20 C.F.R. §§ 404.1527 and 416.927 upon determining the weight to be given Dr. Ali's opinion. Plaintiff suggests that by failing to give Dr. Ali's opinion controlling weight, the ALJ engaged in medical conjecture.

"A treating physician's opinion is given controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record.'" Tilley v. Astrue, 580 F.3d 675, 679 (8th Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2) (2000)). See also Heino v. Astrue, 578 F.3d 873, 880 (8th Cir. 2009); Prosch, 201 F.3d at 1012-13. Indeed, if the opinion of a treating doctor is not controverted by substantial medical or other evidence, it is binding. Cunningham v. Apfel, 222 F.3d 496, 502 (8th Cir. 2000) (citing Ghant v. Bowen, 930 F.2d 633, 639 (8th Cir. 1991); Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998)). However, while the opinion of the treating physician should be given great weight, this is true only if the treating physician's opinion is based on sufficient medical data. Leckenby v. Astrue, 487 F.3d 626, 632 (8th Cir. 2007) (holding that a treating physician's opinion does not automatically control or obviate the need to evaluate the record as a whole and upholding the ALJ's decision to discount the treating physician's medical-source statement where limitations were never mentioned in numerous treatment records or supported by any explanation); Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (holding that a treating physician's opinion is given controlling weight "if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence").

Dr. Ali stated, in an April 29, 2009 Physical RFC Questionnaire, that during a regular workday Plaintiff would frequently experience pain; that she was capable of low stress jobs; that she could not walk long distances because of her knee; that she was "limited [in regard to] overhead activities" due to her shoulder; that she could sit and stand for thirty to forty-five minutes at a time; that, in an eight-hour work day, Plaintiff could sit about four hours and stand/walk less than two hours; that she needed to walk around every ten minutes for five to ten minutes; that Plaintiff needed

a job that permits shifting at will from sitting, standing, or walking; that Plaintiff would need to take unscheduled breaks two to three times in a regular work day; that Plaintiff did not need to use a cane when engaging in occasional standing/walking; that Plaintiff could never lift ten pounds or more and rarely could lift less than ten pounds; that Plaintiff could occasionally turn her head, hold her head in a static position, and look up or down; that Plaintiff could rarely stoop, crouch, and climb ladders and stairs and occasionally twist; that Plaintiff did not have significant limitations with regard to reaching, handling or fingering; and that Plaintiff was likely to be absent from work more than four days a month. Tr. 42-46.

Despite Dr. Ali's opinion as stated in the RFC Questionnaire, the ALJ found that Plaintiff had the RFC to perform the full range of sedentary work. 20 C.F.R. § 404.1567(a) defines sedentary work as follows: "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." Indeed, SSR 85-15, 1985 WL 56857, at *5, states that "[w]here a person has some limitation in climbing and balancing and it is the only limitation, it would not ordinarily have a significant impact on the broad world of work. ... If a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact." The sitting requirement for the full range of sedentary work "allows for normal breaks, including lunch, at two hour intervals." Ellis v. Barnhart, 392 F.3d 988, 996 (8th Cir. 2005) (citing SSR 96-9p, 1996 WL 374185, at *6 (July 2, 1996)). Additionally the range of sedentary jobs requires a claimant "to be able to walk or stand for approximately two hours

out of an eight-hour day. The need to alternate between sitting and standing more frequently than every two hours could significantly erode the occupational base for a full range of unskilled sedentary work." Id. at 997 (citing 1996 WL 374185 at *7).

First, the ALJ acknowledged that Dr. Ali was a treating source but that her opinion was not entitled to controlling weight because it was not well-supported by medically acceptable clinical and laboratory techniques. In this regard, the ALJ considered that Dr. Ali indicated, in substance, that Plaintiff cannot even perform sedentary work activity. Tr. 21. Opinions of treating doctors are not conclusive in determining disability status and must be supported by medically acceptable clinical or diagnostic data. Chamberlain v. Shalala, 47 F.3d 1489, 1494 (8th Cir. 1995) (citing Matthews v. Bowen, 879 F.2d 422, 424 (8th Cir. 1989); 20 C.F.R. § 404.1527(d)(3) (providing that more weight will be given to an opinion when a medical source presents relevant evidence, such as medical signs, in support of his or her opinion). As discussed above in regard to the ALJ's credibility findings, much of the objective medical evidence supports a conclusion that Plaintiff's limitations were not as severe as Dr. Ali's RFC assessment contends. On October 25, 2007, an x-ray revealed "*[m]ild* medial compartment narrowing of the right knee with narrowing of the right patellofemoral joint, suggestive of *early* osteoarthritis." Tr. 447. On February 22, 2008, x-rays were found to reveal "*minimal* degenerative changes involving the articular surfaces of the distal femur, proximal tibia and patella" with "[n]o bony erosive changes." Tr. 160. Based on x-rays, a radiologist described Plaintiff as having a "*moderate* joint effusion" with "*mild* nonuniform joint space narrowing." Tr. 307. On June 22, 2008, physicians at BJH performed shoulder x-rays of the frontal internal/external rotation and axillary views of Plaintiff's shoulder and reported "anatomic alignment with no fracture," with "[c]ystic foci seen in the right humeral head likely related to insertional rotator cuff change," and

ultimately described her shoulder as "stable." Tr. 293. To the extent Plaintiff argues that blood test results showed that she had gout, the ALJ did not dispute that she had gout. Rather, the ALJ referred to the medical listing for inflammatory arthritis and concluded that Plaintiff did not satisfy the criteria of this listing because there was no evidence of persistent inflammation or deformity of one or more major peripheral weight-bearing joints which resulted in the inability to ambulate effectively. The court finds that the ALJ's consideration of the objective medical evidence, upon failing to give controlling weight to Dr. Ali's opinion, is supported by substantial evidence and that his decision, in this regard, is consistent with the Regulations and case law.

Second, Dr. Ali's opinion, as stated in the RFC Questionnaire, is inconsistent with Dr. Ali's treatment notes. Davidson v. Astrue, 578 F.3d 838, 842 (8th Cir. 2009) ("It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes."). An ALJ may "discount or even disregard the opinion of a treating physician ... where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Prosch, 201 F.3d at 1013. Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006) (holding that where a treating physician's notes are inconsistent with his or her RFC assessment, controlling weight is not given to the RFC assessment). Indeed, Dr. Ali reported, on December 11, 2007, that Plaintiff described herself as having "AM stiffness in her right knee lasting 10 mins," with no numbness or weakness or problems bending or lifting, and Dr. Ali characterized her gait and stance as "[n]ormal." Tr. 161, 165, 167. On April 17, 2009, Dr. Ali reported that Plaintiff was "able to get full extension" of the knee and described Plaintiff's gait and stance as "[n]ormal," which is notable because it occurred only twelve days before Dr. Ali wrote the RFC assessment. Tr. 46, 535. In regard to Plaintiff's shoulder, Dr. Ali found no synovitis in the bilateral upper extremities on

December 11, 2007, February 22, 2008, and April 10, 2008. Tr. 158, 167, 264. On February 22, 2008, Dr. Ali wrote that Plaintiff suffered from "painful internal rotation but *no limitation*," and no shoulder impingement. Tr. 158. On April 10, 2008, Dr. Ali reported a normal range of motion and concluded that Plaintiff was suffering from "*mild* crepitus" in the right shoulder. Tr. 264. The court finds that the ALJ's consideration of Dr. Ali's treatment of Plaintiff upon failing to give controlling weight to Ali's opinion is supported by substantial evidence and that the ALJ's decision, in this regard, is consistent with the Regulations and case law.

Third, upon failing to give Dr. Ali's opinion controlling weight, the ALJ considered that Dr. Ali reported that Plaintiff's condition was controlled with prescribed medication. Tr. 21. The court has found above, in regard to Plaintiff's credibility, that the ALJ's consideration of the extent to which Plaintiff's conditions were controlled by medication is supported by substantial evidence. In particular, the court notes that Dr. Ali reported that Plaintiff had relief from prednisone and allopurinol. Tr. 252, 256, 258. In fact, in the RFC Questionnaire, Dr. Ali wrote that Plaintiff "[r]espond[ed] to steroids," and Plaintiff acknowledged that the Prednisone "helped a little bit." Tr. 35, 42. The court finds that the ALJ's consideration of the extent to which Plaintiff's conditions were controlled by medication upon failing to give controlling weight to Dr. Ali's opinion is supported by substantial evidence and that it is consistent with the Regulations and case law.

Fourth, the ALJ considered that Dr. Ali's opinion was unsupported by the record as a whole, including Plaintiff's daily activities. Tr. 21. "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001). See also Travis v. Astrue, 477 F.3d 1037, 1041 (8th Cir. 2007) ("If the doctor's opinion is inconsistent with or contrary to the medical evidence as

a whole, the ALJ can accord it less weight."). On November 1, 2007, doctors noted that Plaintiff could "fully weight bear," though she did limp, but did not need an assistive device. Tr. 400. On February 28, 2008, another physician described Plaintiff's gait as "normal." Tr. 200. During an emergency room admission on April 2, 2008, Plaintiff "ambulate[d] with a steady gait," and "ambulat[ed] to the phone and back multiple times" between her room and the nurses' station. Tr. 369, 371. On June 22, 2008, physicians wrote that Plaintiff moved "all 4 extremities equally"; that she had a "*mild/moderate* knee effusion"; and that no joint had significant erythema. Tr. 293-94. The court finds that the ALJ's consideration of the record as a whole upon failing to give controlling weight to Dr. Ali's opinion is supported by substantial evidence and that it is consistent with the Regulations and case law.

Fifth, a treating physician's checkmarks on a form are conclusory opinions which can be discounted if contradicted by other objective medical evidence. Stormo, 377 F.3d at 805-06; Hogan, 239 F.3d at 961; Social Security Ruling 96-2p, (July 2, 1996). As such, the ALJ was not required to give controlling weight to Dr. Ali's opinion in the RFC Questionnaire.

Sixth, the ALJ considered that Dr. Ali's opinion was inconsistent with the conservative treatment which Plaintiff received. Tr. 21. Conservative treatment is consistent with discrediting a claimant's allegation of disabling pain. Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998).

Seventh, to the extent the ALJ did not specifically address all of the factors listed in 20 C.F.R. §§ 404.1527 and 416.927, it does not mean that the ALJ failed to consider such factors. See Moore ex rel. Moore v. Barnhart, 413 F.3d 718, 721 n.3 (8th Cir. 2005) ("The fact that the ALJ's decision does not specifically mention the [particular listing] does not affect our review."); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995). See also Wheeler v. Apfel, 224 F.3d 891, 896 n.3 (8th Cir.

2000) (citing <u>Black v. Apfel</u>, 143 F.3d 383, 386 (8th Cir.1998) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted ... [and][a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered.") (internal citations omitted). In any case, the ALJ's omission in this regard does not require the court to set aside his decision because such an omission has no bearing on the outcome of Plaintiff's case. <u>See</u> <u>Reynolds v. Chater</u>, 82 F.3d 254, 258 (8th Cir. 1996) ("Although specific delineations of credibility findings are preferable, an ALJ's arguable deficiency in opinion-writing technique does not require us to set aside a finding that is supported by substantial evidence.") (citing <u>Carlson v. Chater</u>, 74 F.3d 869 (8th Cir. 1996)).

In any case, the ALJ did specifically address many factors delineated in the Regulations. In particular, the ALJ noted that Dr. Ali had treated Plaintiff since December 2007 and mentioned several of Plaintiff's appointments explicitly, as well as other aspects of their relationship, such as Dr. Ali's previous letter that indicated she believed Plaintiff could not work. Tr. 18-19. Furthermore, the ALJ acknowledged that Dr. Ali treated Plaintiff specifically for her right knee pain in her capacity as a rheumatologist. Tr. 18-19. Further, as discussed above, in deciding to discredit much of Dr. Ali's RFC assessment, the ALJ found that her opinions were ultimately "not well-supported by medically acceptable clinical and laboratory diagnostic techniques," as well as "inconsistent with the conservative treatment rendered" and the fact that Plaintiff's condition was "controlled with prescribed medication therapy." Tr. 21. Only after having acknowledged these factors did the ALJ conclude that Dr. Ali's opinion deserved "little deference." Tr. 21. Thus, the ALJ did, in fact, properly consider the factors listed in 20 C.F.R. §§ 404.927, 415.927, when he concluded that the evidence indicated that Dr. Ali's opinion deserved little weight. The court finds that the ALJ's

consideration of factors specified in 20 C.F.R. §§ 404.927, 415.927, upon his failing to give controlling weight to Dr. Ali's opinion, is supported by substantial evidence and that it is consistent with the Regulations and case law.

Eighth, in the RFC Questionnaire, Dr. Ali opined that Plaintiff can only "[o]ccasionally" turn her head right or left, hold her head in a static position, or look up or down. Tr. 45. Nowhere in her treatment notes does Dr. Ali mention that Plaintiff had neck difficulties, nor did Plaintiff allege any neck problems during the hearing. In fact, Dr. Ali repeatedly reported either that Plaintiff had "[n]o neck pain," that Plaintiff's neck "[d]emonstrated no decrease in suppleness," or remained silent about Plaintiff's neck. Tr. 157, 166, 224, 251, 256-58, 263-65. The only time Plaintiff's neck is mentioned in Dr. Ali's treatment notes is in regard to her prescribed shoulder exercises. Tr. 536.

Ninth, the RFC Questionnaire completed by Dr. Ali is inconsistent with portions of Plaintiff's testimony at the hearing. Although Dr. Ali stated that Plaintiff can rarely lift and carry less than ten pounds, Plaintiff testified that she could carry a twenty-pound sack of potatoes "probably with [her] left hand." Tr. 39. Although Dr. Ali opined that Plaintiff can stand/walk for less than two hours and sit for about four hours during a normal workday and that Plaintiff must include periods of walking around approximately every ten minutes for a period of five to ten minutes, Plaintiff testified that she can sit for "[l]ike 30 to 45 minutes" before she has to rise and move around and that after a long period of sitting, she must ambulate around the house "at least for like 20 minutes." Tr. 37. Thus, Dr. Ali's assessment is substantially more restrictive than Plaintiff's own testimony.

Tenth, as stated above, the ALJ did consider that Dr. Ali is a rheumatologist. The Commissioner is encouraged to give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." Kelley

v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998) (citation omitted). Nonetheless, for the reasons discussed above, the ALJ found that Dr. Ali's opinion was not entitled to controlling weight. The court finds, therefore, that the ALJ's consideration of Dr. Ali's specialty is based on substantial evidence and that it is consistent with the Regulations and case law.

Eleventh, the court finds that the ALJ did not engage in medical conjecture when discrediting the opinion of Dr. Ali, as the ALJ specifically addressed Dr. Ali's records and the records of other doctors upon doing so, including, as discussed above, clinical signs, symptoms, and findings of the objective medical evidence of record. The court finds, therefore, that Plaintiff's allegation that the ALJ engaged in conjecture is without merit.

In conclusion, the court finds that the ALJ's consideration of Dr. Ali's opinion is supported by substantial evidence and that the ALJ's decision, in this regard, is consistent with the Regulations and case law. Only after considering the record as a whole, including Dr. Ali's opinion, did the ALJ conclude that Plaintiff had "medically determinable and diagnosed gouty arthritis with recurrent right knee tenderness, swelling, and decreased range of motion" and "diffuse synovitis consistent with inflammatory arthritis" and "minimal degenerative changes with joint effusion." Tr. 21. Indeed, the ALJ found that Plaintiff's gouty arthritis was severe but also found that her gouty arthritis did not meet the listing for inflammatory arthritis. Tr. 18. As noted by the ALJ, Listing 14.09 provides that the criteria for this condition include evidence of persistent inflammation or deformity of one or more major peripheral weight-bearing joints resulting in the inability to ambulate effectively. The court finds that the ALJ's finding that Plaintiff did not meet the criteria of Listing 14.09 is supported by substantial evidence. Based on his credibility findings, Plaintiff's medical records, and Plaintiff's testimony, the ALJ determined that "[a]ll other documented impairments were minor or acute

illnesses or injuries resulting in *no significant* long-term functional limitations or complications." Tr. 21. Only after making these findings and considering the requirements of sedentary work did the ALJ determine that Plaintiff was capable to perform the full range of sedentary work. See Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'") (quoting McKinney, 228 F.3d at 863). The court finds that substantial evidence supports the ALJ's RFC determination and that the ALJ's decision, in this regard, is consistent with the Regulations and case law.[3]

## C. Medical-Vocational Guidelines:

Plaintiff contends that the ALJ erroneously relied upon the Guidelines at step five without considering the opinion of a VE to make a final disability determination. "If nonexertional impairments exist that limit the claimant's ability to perform the *full range* of work in a particular category, then the ALJ cannot rely exclusively on the grids to determine disability but must consider

---

[3]     Based on Pfitzner v. Apfel, 169 F.3d 566 (8th Cir. 1999), Plaintiff suggests that the ALJ erred in describing Plaintiff's RFC in "general terms." Doc. 12 at 10. In support of this argument, Plaintiff states that the ALJ found that Plaintiff can perform the full range of sedentary work without describing how her pain would affect her ability to perform sedentary work. As discussed above, the ALJ did consider Plaintiff's credibility regarding the alleged severity of her pain and limitations and concluded that Plaintiff was not fully credible. The court has found that the ALJ's decision, regarding Plaintiff's credibility, is supported by substantial evidence. Moreover, the ALJ specifically addressed Plaintiff's allegations regarding her limitations and incorporated those limitations which he found credible into her RFC. Further, as stated above, upon finding Plaintiff could perform sedentary work, the ALJ specifically considered the requirements of sedentary work. See Goff, 421 F.3d at 790 (holding that it is an ALJ's role to assess a claimant's capacity to perform each of the exertional and non-exertional functions of a given level of work in order to decide which exertional level is appropriate and to decide whether the individual is capable of doing the full range of work contemplated by the exertional level). As such, Plaintiff's reliance on Pfitzner, 169 F.3d 566, is misplaced.

vocational expert testimony."[4] Frankl v. Shalala, 47 F.3d 935, 937 (8th Cir. 1995) (emphasis added).

On the other hand, "[i]f the claimant's characteristics *do not differ significantly* from those

contemplated in the Medical-Vocational Guidelines, the ALJ may rely on the Guidelines alone to

direct a finding of disabled or not disabled." Lucy v. Chater, 113 F.3d 905, 908 (8th Cir. 1997)

(emphasis added). See also Reynolds v. Chater, 82 F.3d 254, 258-59 (8th Cir. 1996) ("Where [] the

ALJ properly discredits the claimant's complaint of a nonexertional impairment, the ALJ is not

required to consult with a vocational expert and may properly rely on the vocational guidelines at step

five."). Moreover, "'an ALJ may use the Guidelines even though there is a nonexertional impairment

if the ALJ finds, and the record supports the finding, that the nonexertional impairment does not

diminish the claimant's residual functional capacity to perform the full range of activities listed in the

Guidelines.'" Lucy v. Chater, 113 F.3d 905, 908 (8th Cir. 1997) (quoting Thompson v. Bowen, 850

F.2d 346, 349-50 (8th Cir. 1988)).

The ALJ in the matter under consideration discredited Plaintiff's allegations regarding the

severity of her pain. Pain itself is a symptom, not a medically determinable impairment. See 20 C.F.R.

§ 416.969a(a); SSR96-4p ("No symptoms or combination of symptoms by itself can constitute a

medically determinable impairment.). The proper issue for consideration is whether Plaintiff's pain

resulted in non-exertional limitations significantly limiting Plaintiff's ability to perform the full range

---

[4]     SSR 83-10, 1983 WL 31251, at *6, defines a non-exertional impairment as "[a]ny
impairment which does not directly affect the ability to sit, stand, walk, lift, carry, push, or pull.
This includes impairments which affect the mind, vision, hearing, speech, and use of the body to
climb, balance, stoop, kneel, crouch, crawl, reach, handle, and use of the fingers for activities."
SSR 83-10, 1983 WL 31251, at *7, further defines non-exertional limitation as "[a]n impairment-
caused limitation of function which directly affects capability to perform work activities other than
the primary strength activities." SSR 83-10, 1983 WL 31251, at *7, defines nonexertional
restriction as an "impairment-caused need to avoid one or more environmental conditions in a
workplace."

of sedentary work. See Ellis v. Barnhart, 392 F.3d 988, 996 (8th Cir. 2005) (finding that the ALJ properly discredited the claimant's allegations of the severity of pain and found that the claimant's pain did not diminish his ability to perform the full range of sedentary work). The court has found that the ALJ's credibility determination is based on substantial evidence. The court has also found that the ALJ's RFC determination is based on substantial evidence. Because the ALJ found that Plaintiff had no significant non-exertional limitations and was thus capable of the full range of sedentary work, the court finds that the ALJ properly relied on the Guidelines and that he was not required to obtain the testimony of a VE to determine whether there is work which Plaintiff can perform. See Lucy, 113 F.3d at 908; Reynolds, 82 F.3d at 258-59. The court further finds that the ALJ's reliance upon the Guidelines is supported by substantial evidence and that it is consistent with the Regulations and case law. Plaintiff's argument, that the ALJ should have utilized the testimony of a VE, therefore, is without merit.

## IV.
## CONCLUSION

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in her Complaint and Brief in Support of Plaintiff's Complaint is **DENIED**; Docs. 1, 12,

**IT IS FURTHER ORDERED** that a separate judgment will be entered following this Memorandum Opinion.

/s/Mary Ann L. Medler
MARY ANN L. MEDLER

UNITED STATES MAGISTRATE JUDGE

Dated this <u>31st</u> day of January, 2012.